UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY MARGARITA ADAMS, | ) | Case No. 1:16cv2106 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Mary Margarita Adams ( "Adams" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ( "Commissioner"), denying her applications for Disability Insurance Benefits ("DIB"), and a Period of Disability, under Title II of the Social Security Act, 42 U.S.C. §§ 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On February 19, 2013, Adams applied for disability benefits. (R. 10, PageID #: 203, 188-191.) Adams stated that she became unable to work because of her disabling condition on

1

December 15, 2011. (R. 10, PageID #: 203, 207, 109, 188.) Adams' application was denied initially and upon reconsideration. (R. 10, PageID #: 108-123, 141-142, 124-140, 146-147.) Thereafter, Adams filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 10, PageID #: 154.)

The ALJ convened a hearing on April 15, 2015, to hear Adams' case (R. 10, PageID #: 74-107.) Adams appeared at the hearing. was represented by counsel, and testified. (R. 10, PageID #: 76.) A vocational expert ("VE") attended the hearing and provided testimony. (R. 10, PageID #: 76-77, 98-105.) On May 11, 2015, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Adams was disabled. (R. 10, PageID #: 57-68; *see generally* 20 C.F.R. § 404.1520(a).) Based on his review, the ALJ concluded Adams was not disabled. (R. 10, PageID #: 57, 68.)

The Appeals Council denied Adams' request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 10, PageID #: 47-49.) Adams now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

## II. PERSONAL BACKGROUND INFORMATION

Adams was born on November 2, 1965, and was 46 years old as of her alleged disability onset date. (R. 10, PageID #: 203, 108, 188.) Accordingly, Adams was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). Adams completed twelfth grade, and is able to communicate in English. (R. 10, PageID #: 208, 206.) She has past relevant work as a medical assistant, and a material handler. (R. 10, PageID #: 99-100, 67.)

2

III. MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Adams' brief alleging errors by the ALJ. As noted earlier, Adams applied for disability benefits on February 19, 2013. (R. 10, PageID #: 203, 188-191.) Adams listed her physical or mental conditions that limit her ability to work as "L4-5 herniated discs back; sciatica pain; radiculopathy; anxiety/panic attacks; angina; claustrophobia; sleep apnea; fibromyalgia; hypothyroidism/hashimoto disease; asthma; and, impingement lower back." (R. 10, PageID #: 207, 108.)

The following medical opinions are relevant:  Gary Posner, M.D.,[2] completed a Medical Source Statement form regarding Adams' physical capacity on December 3, 2013. (R. 10, PageID #: 667-668.) Dr. Posner based his assessments on a diagnosis of right side sciatica. *Id*. According to Dr. Posner, Adams could lift and carry up to 15 pounds frequently. Adams could stand or walk for one to two hours in an 8-hour workday, and only thirty minutes without interruption, and she could sit for one to two hours in a workday, but just thirty minutes without interruption. Adams could occasionally balance, but rarely climb, stoop, crouch, kneel or crawl. She could frequently push or pull (as long as object is "not too heavy"), and frequently reach and perform fine and gross manipulation. Dr. Posner completed a check-box form and checked off that a cane had been prescribed and Adams needed to be able to alternate positions at will. Adams experienced moderate to severe pain, which would interfere with her concentration, and

---

[1] The pertinent medical evidence is further described *infra*, as deemed pertinent to the analysis of the undersigned.

[2] The ALJ's decision refers to Dr. Posner as Dr. Rosner.

take her off-task, but would not cause absenteeism. Dr. Posner said Adams would require two to four hours of additional rest time on an average day. *Id.*

Mark Roth[3], M.D., completed a Medical Source Statement form regarding Adams' physical capacity on September 2, 2014. (R. 10, PageID #: 665-666.) Dr. Roth based his assessments on a diagnosis of fibromyalgia with chronic severe pain, which result in "extreme limb stiffness" and impaired mobility. *Id.* at 665. Dr. Roth opined that Adams could only lift and carry 10 pounds occasionally, and 5 pounds frequently. Adams could stand or walk for two hours in an 8-hour workday, and only one hour without interruption, and she could sit for six hours in an 8-hour workday, but only two hours without interruption. Dr. Roth opined that Adams could occasionally balance, reach, push or pull, but rarely climb, stoop, crouch, kneel or crawl. She could perform fine and gross manipulation frequently. She had not been prescribed a cane or walker, or any other listed type of assistive device. Dr. Roth completed a check-box form and checked the boxes indicating Adams has severe pain that would interfere with her concentration, take her off-task, and cause absenteeism. Adams would require an additional 30 minutes of unscheduled rest time during the workday. (R. 10, PageID #: 665-666.)

Dr. Roth completed a second Medical Source Statement form regarding Adams' physical capacity on February 11, 2015. (R. 10, PageID #: 861-862.) Dr. Roth based his assessments on her fibromyalgia, which causes muscle pain and weakness, and can worsen with prolonged immobility. Dr. Roth marked that Adams could lift and carry 10 pounds occasionally, and 5 pounds frequently. According to Dr. Roth, Adams could stand or walk for two hours in an 8-hour

---

[3]  In several places, the opening brief refers to Dr. "Rother," *see, e.g.,* R. 11, PageID #: 943, 945, but the court understands such references refer to Dr. "Roth." *See, e.g.* R. 10, PageID #: 666.

workday, and thirty minutes without interruption; and she could sit for eight hours in an 8-hour workday, and for two hours without interruption. She could rarely balance, climb, stoop, crouch, kneel or crawl, and occasionally reach, push or pull. Adams could perform fine and gross manipulation frequently. Dr. Roth opined that temperature fluctuations can exacerbate fibromyalgia, so she was limited as to temperature extremes. Dr. Roth further indicated that Adams had not been prescribed any assistive device listed on the check-box form. In addition, he noted her severe pain would interfere with her concentration, take her off-task, and cause absenteeism. Adams would require an additional hour of unscheduled rest time during the workday. (R. 10, PageID #: 861-862.)

On January 20, 2015, Eileen Leininger, Ph.D., a clinical psychologist, reported on the results of an MCMI-III[4] assessment she administered to Adams. (R. 10, PageID #: 865-869.) Dr. Leininger cautioned that an "MCMI-III report cannot be considered definitive," but should be evaluated with additional clinical data. *Id.* at 865. Nevertheless, Dr. Leininger ventured several possible diagnoses: "[Adams] appears to fit the following Axis II classifications best: Dependent Personality Traits, Self-Defeating Personality Features, and Borderline Personality Features." *Id.* Dr. Leininger also suggested some Axis I clinical syndromes, but later pointed out

---

[4]  The "MCMI-III" (Millon Clinical Multiaxial Inventory-III) is a brief psychological assessment, based on the patient's answers to 175 true-false questions. Contrary to claimant's statement that an MCMI-III assessment is based on "extensive examination and testing" (R. 11, PageID #: 940), the MCMI-III "usually takes the average person less than 30 minutes to complete." *See* Jane Framingham, Ph.D. (2016), "Millon Clinical Multiaxial Inventory (MCMI-III)," *PsychCentral* (retrieved May 11, 2017), https://psychcentral.com/lib/millon-clinical-multiaxial-inventory-mcmi-iii/

these were "largely transitory symptoms," whereas the Axis II traits were "enduring and pervasive personality traits" that underlie Adams' "emotional, cognitive, and interpersonal difficulties." *Id.* at 865-866. The psychologist pointed out that diagnostic criteria used in the MCMI-III differ from those in the DSM-IV. She stated that although MCMI-III results can be useful in considering possible DSM-IV diagnoses, "[d]efinitive diagnoses must draw on biographical, observational, and interview data in addition to self-report inventories such as the MCMI-III." *Id.* at 868. In conclusion, Dr. Leininger stated that the MCMI-III results "should be viewed as a guide for further investigation by the clinician." *Id.* at 869.

Two months later, on March 27, 2015, Dr. Leininger completed a Medical Source Statement form regarding Adams' mental capacity. (R. 10, PageID #: 863-864.) For most of the occupational adjustment factors, Dr. Leininger assessed that Adams occasionally would be able to maintain attention and concentration for extended periods; respond appropriately to changes in routine settings; maintain regular attendance and punctuality; interact with the public, coworkers, and supervisors; deal with work stress; and complete a normal workday without interruption from her psychological symptoms. *Id.* at 863. Dr. Leininger also marked that Adams would be occasionally be able to understand, remember, and carry out job instructions, and occasionally socialize and behave in an emotionally stable manner. *Id.* at 864. Dr. Leininger identified the diagnoses supporting her assessment as "296.33, 300.00," which are the DSM-IV codes for "Major Depressive Disorder, Recurrent, Severe Without Psychotic Features," and "Anxiety Disorder NOS." She indicated she had been treating Adams for four months. *Id.*

## IV. TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert provided testimony. (R. 10, PageID #:  98-105.) The VE determined that Adams had past relevant work as a medical assistant and a material handler. (R. 10, PageID #: 99-100.) The medical assistant has a DOT number 079.362-010, SVP 6, a light exertion, skilled occupation. Her previous job at Walmart as a stocker is classified as a material handler in the DOT, number 929.687-030, SVP 3, which is semi-skilled, heavy exertion. *Id*. at 100.

The ALJ posed a hypothetical question concerning an individual of Adams' age, education, and work experience, who can work at less than a full range of light work. The hypothetical person would be limited to lifting and carrying twenty pounds occasionally, and ten pounds frequently; and also

> . . . can sit for six hours a day, stand and walk for hour hours a day; push and pull as much as [she] can lift and carry; can handle on the right frequently, unlimited on the left; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; balance frequently; stoop, kneel, and crouch occasionally; and never crawl. This person would also have environmental limitations in that she could not be in an environment of unprotected heights, moving, mechanical parts, operating a motor vehicle, and be occasionally in an environment of humidity and wetness, dust, odors, and pulmonary irritants, extreme heat, cold. This person would be, with regard to understanding, remembering, and carrying out instructions would be limited to performing simple and routine and repetitive tasks but not at a production rate pace. Limited to simple, work-related decisions and interactions – and with regard to responding to supervisors, coworkers, and work situations, the individual would be limited such that interactions with supervisors, coworkers, and the public needs to be on a conventional level with no conflict resolution or persuading others. And with regard to changes in work setting, would be limited to simple, work-related decisions.

(R. 10, PageID #: 101-102.) The hypothetical question posed was whether such a hypothetical person could perform the claimant's past work? The vocational expert responded, no. *Id.* at 102.

7

The ALJ asked if such a hypothetical person could perform any other work. The VE responded that there would be other jobs the person could perform, giving as the first example a food and beverage worker, DOT number 209.567-014, SVP 2, unskilled. One hundred eighty (180) such jobs exist in the Cleveland metro area, 890 in the state of Ohio, and 21,000 jobs in the national economy. (R. 10, PageID #: 102.) Another example is office helper, DOT number 239.567-010, SVP 2, unskilled. Four hundred (400) jobs exist in the metro area, 2,000 in the state, and 50,000 jobs in the national economy. Also, a charge account clerk, DOT number 205.367-014, SVP 2, unskilled and sedentary. Two hundred fifty (250) jobs exist in the metro area, 800 in the state, and 39,000 jobs in the national economy. The VE clarified that the food and beverage worker was a sedentary job, and the office helper was light exertional. *Id.* at 103.

The ALJ then modified the hypothetical to an individual who is limited to less than a full range of sedentary. The ALJ continued:

> That is to say this person can occasionally lift and carry 10 pounds, frequently carry and lift 5 pounds; can sit for eight hours[,] without interruption for two hours; can stand for two hours[,] without interruption for half an hour; who can occasionally reach overhead on the right and the left; and occasionally reach in other ways on the right and the left. * * * * * And could handle frequently, finger frequently, feel frequently; should rarely climb ropes, ramps, and stairs. * * * * * Rarely crawl, rarely crouch, rarely kneel, rarely stoop, rarely balance, rarely climb ladders, ropes, or scaffolds. That is something less than occasional, but more than never for our terms. Who should not be in an environment of extreme heat or cold; who is limited to performing simple, routine, and repetitive tasks not at a production rate pace; and as far as using judgment, is limited to simple work-related decisions; who can occasionally respond appropriately to supervisors, coworkers, and the public;  is limited to simple work-related decisions with regard to changes in the work setting; and who will be off-task with an additional unscheduled rest time of one hour during every day; and absent from work once a month.

(R. 10, PageID #: 104-105.) The hypothetical question posed was whether such a hypothetical person could perform any of the past work, or any other work? The VE responded he was unable to identify any jobs such a person could perform. *Id.* at 105.

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his May 11, 2015, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since December 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease, fibromyalgia, obesity, and anxiety disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:  she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour workday. She can stand/walk for 4 hours in an 8-hour workday. She can push/pull within lifting restrictions. She can frequently handle with the right upper extremity. She can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop, kneel, and crouch. She can never crawl. She must avoid all exposure to unprotected heights and moving mechanical parts and can never operate a motor vehicle. She can tolerate occasional exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and extreme heat. Mentally, the claimant is limited to performing simple, routine, and repetitive tasks but not at a production [rate] pace (e.g. assembly line work). She is limited to simple work-related decisions. Interaction with supervisors, coworkers, and the public

need to be on a conventional level with no conflict resolution or persuading others.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on November 2, 1965, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR  Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2011, through the date of this decision (20 CFR 404.1520(g)).

(R. 10, PageID #: 59, 61, 67-68.)


VI. DISABILITY STANDARD

A claimant is entitled to receive disability insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Comm'r Soc. Sec. Admin.*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id*. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r Soc. Sec. Admin.*, 378 F.3d 541, 548 (6th Cir. 2004).

## VII. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r Soc. Sec. Admin.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a

11

reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII. ANALYSIS

Adams briefs two issues for review: (1) Whether the ALJ failed to correctly apply the treating physician rule, and (2) whether the ALJ's assessment of residual functional capacity is supported by substantial evidence. (R. 11, PageID #: 934.)

### A.  Treating Physician Rule

The claimant contends that the ALJ failed to give appropriate consideration and weight to the opinions of the treating sources, Dr. Roth, Dr. Posner, and Dr. Leininger. (R. 11, PageID #:

943-947.) Adams contends that the ALJ improperly relied on the opinions of non-treating, non-examining physicians. *Id.* at 944.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. *Gayheart v. Comm'r Soc. Sec. Admin.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. The "treating physician rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating physician rule requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Comm'r Soc. Sec. Admin.*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Comm'r Soc. Sec. Admin.*, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by considering specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Comm'r Soc. Sec. Admin.*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Comm'r Soc. Sec. Admin.*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

An ALJ must evaluate each medical opinion in the record. *Smith v. Comm'r Soc. Sec. Admin.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c). Treating physicians' opinions are only given deference when the ALJ finds they are supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3 (citing *Jones*, 336 F.3d at 477). The ALJ is not bound by a treating physician's opinions, and may reject the treating physician's findings where good reasons to do so are found in the record. *Hare v. Comm'r Soc. Sec. Admin.*, No. 01-4228, 2002 WL 1354699, at *2 (6th Cir. June 19, 2002).

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Comm'r Soc. Sec. Admin.*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.

Adams contends that the ALJ erred by not performing an analysis assessing the three treating sources—Drs. Roth, Posner, and Leininger—and whether they were entitled to controlling weight. In addition, she claims the ALJ did not address the relevant factors in 20

14

C.F.R. § 404.1527(c). (R. 11, PageID #: 945.) The regulations require the ALJ to "consider" the factors in 20 C.F.R. § 404.1527(c) when assigning weight to the medical opinions. However, "there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision." SSR 06-3p (emphasis added). The Sixth Circuit has indicated that the pertinent regulations simply require an ALJ to consider the factors and provide some written explanation regarding the assigned weight, but there is no requirement that the ALJ cite each factor considered in the analysis. *Francis*, 2011 WL 915719, at *3. There, the court stated,

> Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis. Here, the ALJ acknowledged Dr. Wakham's role as Francis's "treating family osteopath." In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more.
>
> Nor would it matter, in this case, if they did. Because the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times," *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010) (per curiam), we excuse a decision's noncompliance with its provisions "where [the decision] has met the goal of [the regulation]—the provision of the procedural safeguard of reasons—even though [it] has not complied with the terms of the regulation," *Wilson*, 378 F.3d at 547. So long as the decision "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion," we look past such procedural errors. *Friend*, 375 Fed.Appx. at 551.

*Francis*, 2011 WL 915719, at *3 (internal citations omitted).

15

The ALJ's decision explained why the he gave "little weight" to Dr. Roth's opinions in such a manner to enable "the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion." *Friend*, 375 Fed.Appx. at 551. Although the decision did not provide a "factor-by-factor analysis," there is such requirement. *Francis*, 2011 WL 915719, at *3. Here, the ALJ specifically considered Dr. Roth's two Medical Source Statement opinions, which indicated Adams' limitations resulted from fibromyalgia,[5] but provided good reasons for discounting them—because the opinions were "inconsistent with the record as a whole, which is absent significant treatment and significant signs and findings on examination, including no specific mention of tender point findings." (R. 10, PageID #: 66; *see generally* PageID #: 665-666, 861-862.) The ALJ noted earlier in his decision that "there is no evidence the claimant has demonstrated pain on at least 11 of 18 tender points." *Id.* at 60.

In addition, it is important to read the ALJ's decision as a whole. The ALJ further stated that, despite her history of fibromyalgia, physical examinations in the record were "largely unremarkable." (R. 10, PageID #: 63.) The ALJ pointed to an October 4, 2011, examination by Gary Kutsikovich, M.D., in which Adams complained of radiating back and leg pain, but exhibited only moderate tenderness in her right lower lumbosacral paraspinal muscles. Dr.

---

[5]  Social Security Ruling (SSR) 12-2p describes criteria for evaluating whether a person has a medically determinable impairment of fibromyalgia. *Luukkonen v. Commissioner*, No. 15-1561, 2016 WL 3426370, at *4-*5 (6th Cir. June 22, 2016). Under SSR 12-2p, a person has fibromyalgia if: (1) there is a history of widespread pain, in all quadrants of the body, that has persisted for at least 3 months (the pain may fluctuate in intensity and may not always be present); (2) at least 11 of 18 possible positive tender points are found on physical examination; and (3) there is evidence that other disorders were excluded as possible causes of the pain. SSR 12-2p, 2012 WL 3104869, at *2-*3.

16

Kutsikovich had found her examination to be consistent with right-sided lumbar radiculopathy. (R. 10, PageID #: 511.)

The ALJ also referenced an April 2, 2012, exam with Gary A. Posner, M.D., during which Adams reported "problems with sciatica for over a year." (R. 10, PageID #: 399). She had "lower back pain going down either" leg, but no numbness. (*Id*.) Adams brought to the exam a November 2011 MRI report, which indicated left lateral disc herniation at L4-5, impinging on the left nerve root. (*Id*.; *see also* PageID #: 284 (MRI).) She also reported a history of fibromyalgia, but she did "not want a referral or other treatment" (R. 10, PageID #: 400) and she "deals with it." (*Id*. at 399.) Dr. Posner noted Adams was "mildly tender" across the lower lumbar region, and had some pain with extension and flexion of the back, but had normal power and sensation in her legs. (*Id.* at 400.)

During a November 14, 2012 appointment, Adams reported subjective complaints of diffuse pain from fibromyalgia, and indicated that her sciatica was acting up at times. (*Id.* at 405.) Dr. Posner noted she was tender in the posterior neck, as well as throughout her back, and she had pain in one leg on single leg raise, but had normal power and sensation in her legs. (*Id.* at 415.)

The ALJ also cited to Adams' consultative medical exam with internist Dorothy A. Bradford, M.D. on August 27, 2013. (R. 10, PageID #: 63, citing PageID #: 636-643.) Adams advised Dr. Bradford that her chief complaints were low back pain and fibromyalgia. (*Id.* at 640). She reported to the doctor that she had fallen down steps in November 2010, herniating disks in her lower back, and she had herniated a disk in her neck from a car accident years ago. Adams complained of pain in her back, which travels down her right leg to her toes. In addition,

17

she said she had fibromyalgia since 2003, which she described as causing whole body pain, from her head to her toes. She said she stays in bed two or three days at a time. (*Id.* at 640.)

Dr. Bradford's musculoskeletal exam, however, showed normal posture and gait. Adams' head and neck were normal to inspection and palpation, with full painless range of motion of the neck. For the spine, ribs, and pelvis, examination showed no tenderness or instability, with a full range of motion and normal strength and tone. (R. 10, PageID #: 642.) Both arms and both legs showed no misalignment or tenderness, a full range of motion, and normal strength and tone. (*Id.* at 642-43.)

Dr. Bradford's assessment was Adams had degenerative disk disease of the cervical and lumbar spines, which causes bilateral hand weakness, and pain down the right leg. (R. 10, PageID #: 643.) Adams had a full range of motion in the lumbar spine, but diminished range in the cervical spine. (*Id.* at 643, *see also id.* at 637.) Dr. Bradford stated no trigger points were elicited. (*Id.* at 642, 643.)

The ALJ also cited a December 3, 2013, exam with Dr. Posner, when Adams complained of moderate to severe pain in her lower back and down her right leg. The doctor found tenderness in the lower back, with limited range of motion. Adams had normal power and sensation in her legs, and positive straight leg raising, but "refuses to consider surgery." (R. 10, PageID #: 64, 731-732.)

The ALJ pointed out that Adams "has undergone conservative treatment for her alleged pain," pursuing physical therapy, but has not required epidural injections, the use of a TENs unit, surgical intervention, or any other treatment commonly seen with disabling impairments. (R. 10, PageID #: 64.)

18

The court finds that the weight that the ALJ assigned to Dr. Roth's opinion is supported by good reasons, which have a basis in evidence in the case record, and are sufficiently specific to make clear the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ's decision addressed the medical opinion evidence, as discussed above, and stated that he gave little weight to the opinion of Dr. Roth because the medical evidence did not support the suggested limitations on the stated basis of fibromyalgia with chronic pain. (R. 10, PageID #: 66.) The ALJ's decision makes clear he considered the consistency and supportability of the opinions when considered in light of the record evidence as a whole. *See* 20 C.F.R. § 404.1527(c). Although the decision could have provided further analysis of Dr. Roth's opinions, such was required to affirm the decision. The court finds that the decision of the Commissioner in this respect is supported by substantial evidence.

The ALJ gave greater weight to the opinions of the state agency medical consultants Dr. Kutsikovich and Robert Wyoskinski, M.D., because the ALJ found their opinions were consistent with the medical record as a whole, finding Adams could perform light and sedentary work. (R. 10, PageID #: 65-66.) State agency doctors are considered highly-qualified experts in disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy*, 594 F.3d at 514-515; *Smith*, 482 F.3d at 875. The court finds no error in the weight given to Drs. Kutsikovich and Wyoskinski.

The ALJ, however, gave "little weight" to the opinion of Dr. Posner, stating that his assessment that Adams' limitations resulting from sciatica were "inconsistent with the record as

a whole, including examination findings, conservative treatment, and the claimant's own reports of functioning." (R. 10, PageID #: 66.) While the medical record evidences a physical basis for Adams' sciatica, namely her herniated disks, the ALJ noted that Adams has only sought conservative treatment for her alleged pain, pursuing physical therapy, but not any other treatment commonly seen with disabling impairments. (*Id.* at 64.) The ALJ stated that the postural and environmental limitations in his RFC adequately addressed Adams' complaints of pain and limitations. *Id.*

Again, the court finds that the weight that the ALJ assigned to Dr. Posner's opinion is supported by good reasons. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ's decision addressed the medical opinion evidence, as discussed above, and stated that he gave little weight to the opinion of Dr. Posner because the medical evidence did not support the suggested limitations on the stated basis of sciatica. (R. 10, PageID #: 66.) The court finds that the decision of the Commissioner in this respect is supported by substantial evidence.

Adams further challenges the ALJ's assessment of Dr. Leininger's opinion. The ALJ gave "partial weight" to the Dr. Leininger opinion, which found that Adams' "mental impairments would not prevent her from engaging in occasional to frequent occupational adjustments, intellectual functioning, and personal/social adjustments." (R. 10, PageID #: 67, citing PageID #: 863-864.) The ALJ concluded that this assessment was generally consistent with the medical evidence. *Id.* Although Adams argues that the ALJ ignores "substantial limitations" in Dr. Leininger's opinion (R. 11, PageID #: 946), the ALJ partially incorporated the psychologist's limitations into a reduced range of work in the RFC. The ALJ's decision must stand if it is supported by substantial evidence, regardless of whether substantial evidence also

20

supports a different opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. The court finds that the decision of the Commissioner is supported by substantial evidence.

### B. Whether ALJ's RFC Is Supported by Substantial Evidence

Adams argues that the ALJ's assessment that Adams is capable of performing light work "is based upon a selected reading of the evidence designed to fit the desired non-disability outcome." (R. 11, PageID #: 947-948.) Adams contends that an objective review of the evidence would lead to a greater restrictions, and limit Adams to less than a full range of sedentary work, resulting in a finding of disabled. Adams accuses the ALJ of picking and choosing evidence, and crediting only those portions of the medical evidence with which he agrees. *Id.* at 948. Of course, the Sixth Circuit has pointed out that "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r Soc. Sec. Admin.*, 572 F.3d 272, 284 (6th Cir. 2009). Nevertheless, a selective reading of the record is not appropriate because:

> Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Font v. Colvin*, No. 1:14CV2805, 2016 WL 675703, at *7 (N.D. Ohio Feb. 2, 2016), *adopted by* 2016 WL 659843 (N.D. Ohio Feb. 17, 2016) (quoting *Garner*, 745 F.2d at 388).

In discussing Adams' residual functional capacity, the ALJ determined that her medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [Adams'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 10, PageID #: 63.) The ALJ reviewed objective medical evidence which he viewed as inconsistent with Adams'

subjective allegations of pain and limitation. *Id*. The ALJ noted that Adams had only sought conservative treatment for her alleged pain. *Id*.at 64. Given the signs and findings on examination, diagnostic tests, and her conservative treatment, the ALJ found Adams remained capable of performing a range of light work. *Id*.

Regarding Adams' mental impairments, the ALJ found that the medical record supported a finding of no more than moderate level limitations. (R. 10, PageID #: 64.) The ALJ reviewed the pertinent evidence and evaluations. He noted that Adams received only conservative treatment for anxiety and she had no consistent mental health treatment, let alone psychiatric hospitalization. *Id.* at 64-65.

Adams contends that the RFC for light work not only resulted from a selective reading of the evidence, but she accuses the ALJ of distorting evidence as well. She points to the ALJ's summary of Adams' testimony at the hearing. (R. 11, PageID #: 949.) The ALJ had stated, "Other factors belie the claimant's credibility," and then continued:

> For example, the claimant's allegations about the severity of her physical and mental impairments are inconsistent with her own reports about her activities of daily living. The claimant testified that she remains capable of performing household chores, maintaining personal care, driving, and climbing the stairs to her home, all of which suggest she is not as limited as alleged.

> The claimant's testimony is somewhat inconsistent, which additionally calls her credibility into question. For example, the claimant estimated she could sit for only 20 to 25 minutes at a time, but she also testified her last car ride was 45 minutes in duration.

(R. 10, PageID #: 65.) Adams argues that the actual testimony at the hearing indicates a more limited ability to perform some activities, and her limited ability is not substantial evidence that her symptoms are not disabling. (R. 11, PageID #: 949, citing *Rogers v. Comm'r Soc. Sec. Admin.*, 486 F.3d 234, 248 (6th Cir. 2007).) The Commissioner responds that the ALJ did not

22

state that Adams' daily activities indicated she could work a full-time job (R. 13, PageID #: 965),

rather, he stated the activities "suggest she is not as limited as alleged." *See* R. 10, PageID #: 65.

The ability to perform some household activities on a limited basis is not substantial

evidence that a claimant's symptoms are not disabling. *See, e.g., Lorman v. Comm'r Soc. Sec.

Admin.*, 107 F. Supp. 3d 829, 837-838 (S.D. Ohio 2015). Activities such as taking care of oneself

or household tasks are not considered to be substantial gainful activity. *Id.* (quoting 20 C.F.R. §

404.1572(c).) The ALJ's discussion of Adams' activities of daily living was a minor portion of

the ALJ's extended consideration of the extent to which "the intensity, persistence and limiting

effects of the claimant's symptoms . . . limit the claimant's functioning." (R. 10, PageID #: 62.)

The ALJ's discussion of this issue focused primarily on the medical evidence of record, *see* R.

10, PageID #: 62-65. The brief reference to Adams' testimony concerning her daily activities

was not a critical component of the ALJ's determination that "[h]er allegations of disability are

generally not supported by substantial evidence or clinical findings." *Id.* at 67. These activities

were not cited to demonstrate that Adams could perform SGA, but rather, in consideration of the

entire record, were relevant to the alleged severity of Adams' impairments.

Adams also contends that the ALJ should not have relied upon "outdated" opinions[6] from

consulting examiners, because they are not consistent with the objective evidence of record. (R.

---

[6] Adams' argument does not identify the "outdated" assessments (R. 11, PageID #: 951, citing
PageID #: 66). But the brief cites the ALJ's decision PageID # 66 (Tr. 20), which references a
Physical RFC Assessment from Dr. Wyoskinski, dated September 2013, and a June 18, 2013,
Psychiatric Review Technique and Mental RFC Assessment from Kristin Haskins, Psy.D. In the
same page of the brief, Adams directs the court to what she considers the "largely consistent"
May 2013 evaluation that she argues the ALJ should have placed more reliance on. (R. 11,
PageID #: 951, referring to PageID #: 627-628.)

23

11, PageID #: 951, citing PageID #: 66.) Adams does not specifically identify the inconsistencies she refers to, although she argues that the report of an agency psychologist is "largely consistent" with the report and findings of Dr. Leininger. (R. 11, PageID #: 951, citing PageID #: 628-633, 863-864.) As already discussed, the ALJ assessed the opinions and partially incorporated Dr. Leininger's limitations into a reduced range of work in the RFC.

The court finds that the ALJ's RFC determination is supported by substantial evidence, which his decision explicitly demonstrates is based upon the record taken as a whole.


## IX. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.


Date:  June 29, 2017                              s/ *David A. Ruiz*
                                                  David A. Ruiz
                                                  United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).